<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **MARYJO SALAMONE,** | : | **Civil Action No.: 09-5856 (GEB)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| **CARTER'S RETAIL, INC.,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

<u>ARPERT, U.S.M.J</u>

## I.    INTRODUCTION

This matter comes before the Court on a Motion by Defendant Carter's Retail, Inc. ("Defendant" or "Carter's") for a protective order with respect to Plaintiff MaryJo Salamone's ("Plaintiff") interrogatories nos. 19 and 25 [dkt. entry no. 28], returnable January 3, 2011.  Plaintiff filed opposition on December 20, 2010 and Defendant filed a reply on December 27, 2010.  For the reasons stated herein, Defendant's Motion is denied.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed a Complaint [dkt. entry no. 1] in state court on October 6, 2009, which Defendant removed to the United States District Court for the District of New Jersey, alleging "wrongful termination in violation of company policy" (*see* Pl.'s Complaint, dkt. entry no. 1 at 2-4), "age discrimination" (*Id*. at 4-5) and "disability discrimination" in violation of the New Jersey Law Against Discrimination ("NJLAD") (*Id*. at 5), as well as defamation/slander (*Id*. at 6-7) against Defendant.  By way of background, Plaintiff alleges that, as a member of a protected class as an employee over age forty (40), she was wrongfully terminated by Defendant after approximately thirteen (13) years of employment during which she received only positive performance reviews.  *Id*. at 1-2, ¶¶ 3-5.  Plaintiff

alleges that she worked as a store manager and that prior to her termination, she was offered a position to manage Defendant's newest store in New Jersey which she turned down due to a physical disability. *Id*. at 2, ¶¶ 6-7.  Plaintiff alleges that she was terminated by Defendant on October 31, 2008 due to "timecard fraud".  *Id*. at 2, ¶ 10.

More specifically, Plaintiff alleges that she was "terminated by Defendant for working off the clock, or working about five hours without charging Defendant for her time, ...[and] replaced by a younger, less-experienced employee".  *See* Pl.'s Opp'n Br. at 1.  Based upon "Defendant's employee handbook" (*Id*.), and Plaintiff's contention that Defendant "applies its policies and procedures uniformly throughout the company" (*Id*. at 3), Plaintiff argues that she should not have been terminated for any offense that she may have committed because "working off the clock is subject to progressive discipline short of termination" and because "timecard fraud [is] an offense distinct from working off the clock" (*Id*. at 1).  Thus, Plaintiff maintains that Defendant has used the charge of timecard fraud, or "fraudulently adjusting recorded time worked or falsifying Company information", as pretextual grounds for her immediate termination.  *Id*.  Further, Plaintiff claims that "she was treated differently from similarly-situated employees accused of working off the clock".  *Id*.  As such, Plaintiff argues that in order to prove her case, "she requires information about all similarly-situated employees who were disciplined for working off the clock" (*Id*.) on a "corporate-wide basis" (*Id*. at 3).

Defendant claims to be "the largest branded marketer of baby and children's clothing in the United States", with over "6,000 employees in 491 stores nationwide".  *See* Def.'s Br. at 2.  Each of Defendant's retail stores "is supervised by a Store Manager", "the Manager of each store reports to a District Manager", the District Managers "report to one of four Regional Vice Presidents", and the "Regional Vice Presidents...report to Carter's Senior Vice President of Store Operations".  *Id*.  At the time of her termination, Plaintiff was the Store Manager of "Store #43 in Manasquan, New Jersey".  *Id*.

2

Defendant maintains that it "terminated Plaintiff's employment for violating Company policy".  *See* Def.'s Br. at 2.  Defendant points out that "as a Store Manager, Plaintiff had been paid on an hourly basis since January 1, 2008, when Defendant converted the position from an exempt position to a non-exempt position" after previously distributing "information about the effect of the change and held training classes to insure compliance with state and federal wage and hour laws".  *Id*.  Defendant maintains that after discovering that "Plaintiff had been working off the clock and falsifying her time records in order to underreport the number of hours she worked", Defendant terminated her employment.  *Id*. at 2-3.  More specifically, Defendant claims that "Plaintiff's time records" demonstrated a "a pattern of conduct, both before and after October 7, 2008, indicating that Plaintiff was working off the clock" in order "to avoid reporting any overtime".  *Id*. at 3.

During the course of discovery, Plaintiff propounded interrogatories to which Defendant responded as follows:

> **Interrogatory No. 19**:  Identify any and all other employees who were terminated by Carter's within one year before or after October 31, 2008, the date on which Plaintiff's employment was terminated.

> **June 17 Response**:  Plaintiff is the only Carter's employee in the State of New Jersey whose employment was terminated due to timekeeping-related misconduct within one year before or after October 31, 2008.  To the extent this Interrogatory seeks information related to terminations at stores or locations outside the State of New Jersey or for reasons other than timekeeping-related misconduct, Defendant objects on the basis that the Interrogatory is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

> **August 24 Response**:  In Interrogatory No. 19, Plaintiff has requested the identities of all employees at any Carter's location whose employment was terminated for any reason within one year before or after October 31, 2008.  This interrogatory is overly broad, as it is neither limited to the geographic area where Plaintiff worked (New Jersey) nor the specific type of misconduct for which Plaintiff was discharged (i.e. timekeeping misconduct).  For purposes of allegations of discrimination, employees

must be similarly-situated to Plaintiff.   Here, individuals whose employment was terminated for absenteeism, theft, or reasons having nothing to do with timekeeping misconduct are not similarly-situated to Plaintiff.   Likewise, individuals whose employment was terminated in Montana, New Mexico, Arkansas, and the like are not similarly-situated to Plaintiff either, as their terminations necessarily would have involved different decision-makers.   Consequently, Carter's appropriately limited the scope of this Interrogatory to the identities of those employees in New Jersey whose employment was terminated for timekeeping-related misconduct... .

**Interrogatory No. 25**:   Set forth the names of any and all other employees who were either terminated for timecard fraud or who were over age forty and who were terminated by Carter's for any other reason within one year before or after October 31, 2008, the last known address of each person, the reason for each such person's termination, and the name and age of any person who filled the position vacated by any such terminated employee.

**June 17 Response**:   Plaintiff is the only Carter's employee in the State of New Jersey whose employment was terminated due to time-keeping related misconduct within one year before or after October 31, 2008.   To the extent this Interrogatory seeks information related to terminations at stores or locations outside the State of New Jersey or for reasons other than time-keeping related misconduct, Defendant objects on the basis that the Interrogatory is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**August 24 Response**:   In Request No. 25, Plaintiff has requested the identities of all employees (regardless of age) at any Carter's location whose employment was terminated for "time card fraud" within one year before or after October 31, 2008 and all employees over the age of 40 at any Carter's location whose employment was terminated for any reason within one year before or after October 31, 2008.   As with Interrogatory No. 19, and for the reasons explained above with respect to Interrogatory No. 19, this Interrogatory is overly broad because it is not limited in territory or scope to employees that are similarly-situated to Plaintiff.   Carter's appropriately limited the scope of this Interrogatory to the identities of those employees in New Jersey whose employment was terminated for timekeeping-related misconduct... .

*See* Cert. of James M. Powell ("Powell"), Ex. B.

Consistent with the Court's Scheduling Orders filed April 14, 2010 (*see* dkt. entry no. 24) and

June 3, 2010 (*see* dkt. entry no. 25), the Parties' dispute concerning the scope of Plaintiff's discovery requests was brought to the Court's attention by letter dated September 16, 2010 from Timothy P. Smith, Esq. (*see* dkt. entry no. 31, Ex. E).   Thereafter, the Court conducted two (2) case management conferences during which this dispute was addressed.   Although counsel agreed to proceed informally, based on the Court's instructions during these conferences, the parties later disagreed as to what the Court directed.   Specifically, Plaintiff contends that on September 21, 2010, the Court instructed Defendant to produce "all records regarding disciplinary actions and terminations in Defendant's East Region for the time period from October 31, 2007 to October 31, 2009".   *See* Pl.'s Opp'n Br. at 7. Oppositely, Defendant contends that after the September 21, 2010 conference with the Court, it was to provide Plaintiff with "an alphabetical list of all employees involuntarily terminated in Carter's East Region during the period of October 31, 2007 and October 31, 2009...[that includes] store number, brand, city, state, date of birth, job title, full or part-time status, regular or temporary status, termination date, and reason for termination for each person".   *See* Def.'s Br. at 6.

Plaintiff further contends that during the later conference on October 26, 2010, the Court instructed Defendant to provide Plaintiff "with all records regarding disciplinary action taken with respect to similarly situated employees for working off the clock and other time-keeping infractions" and defined "similarly situated employees to include store managers, assistant managers, sales associates, stock associates, and supervisors...[including] part-time and full-time...but not temporary or seasonal workers".   *Id*. at 7-8.   Notwithstanding this direction, Plaintiff claims, "Defendant still refuses to provide the requested discovery".   *Id*. at 8.   According to its counsel, notwithstanding the Court's informal efforts, Defendant "remains concerned about the proper scope of Plaintiff's discovery requests".   *See* Def.'s Br. at 6.

As a result, on December 10, 2010, Defendant filed the instant Motion seeking a Protective

5

Order with respect to Plaintiff's interrogatories nos. 19 and 25.

    **A.**    <u>**Defendant's Arguments in Support of the Motion**</u>

    Initially, Defendant notes that Plaintiff has lodged allegations of discrimination pursuant to the NJLAD. *See* Def.'s Br. at 3. Citing *Swider v. Ha-Lo Indus., Inc.*, 134 F. Supp. 2d 607, 621 (D.N.J. 2001), *Erickson v. Marsh & McLennan Co.*, 117 N.J. 539, 550 (1990), *Clowes v. Terminix Int'l, Inc.*, 109 N.J. 575, 595 (1988), *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 210 (1999), and *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), Defendant maintains that "New Jersey courts have interpreted the NJLAD to have the same standards of proof and persuasion as the federal anti-discrimination laws". *Id.*

        **1.**    **The inquiry in a discrimination case is limited to similarly-situated employees.**

    Citing *Proctor v. ARMDS, Inc.*, 2009 WL 2518585, at *1 (3d Cir. 2009) and *Geaney v. Computer Scis. Corp.*, 2005 WL 1387650, at *4 (D.N.J. 2005), Defendant maintains that while an inquiry as to "whether the employer treated similarly-situated employees outside of the protected class more favorably than the employer treated the Plaintiff" is relevant, any inquiry into the "treatment of employees who are not similarly situated to Plaintiff is irrelevant and cannot be used to establish [a] discrimination claim". *Id.* at 3-4. Citing *Grassmyer v. Shred-It USA, Inc.*, 2010 WL 3330102 (3d Cir. 2010), *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1993), and *Mosca v. Cole*, 384 F. Supp. 2d 757, 766 (D.N.J. 2005), Defendant maintains that in order "to be deemed similarly-situated, the individuals with whom the Plaintiff seeks to compare his/her treatment must have (1) dealt with the same supervisor, (2) have been subject to the same standards, and (3) have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it". *Id.* at 4.

### 2. Plaintiff's interrogatories are overly broad, unduly burdensome, and seek information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and Defendant has already provided appropriate information.

Acknowledging Plaintiff's right to discover information related to similarly-situated individuals, Defendant contends that "the issue here is the proper scope of Plaintiff's interrogatories". *Id*. at 4. In sum, Defendant argues that Plaintiff's interrogatories are "overly broad, unduly burdensome, and seek information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence". *Id*. at 6. Further, Defendant argues that it "has already provided...appropriate information to Plaintiff". *Id*.

Citing *Bowers v. National Collegiate Athletic Association*, 2008 WL 1757929, at *6 (D.N.J. 2008), *Bayer AG v. Betachem, Inc*., 173 F.3d 188, 191 (3d Cir. 1999), and *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998), Defendant maintains that "while the scope of discovery is...broad, the right is not unlimited and may be circumscribed" as "the court has broad discretion to narrowly tailor discovery to meet the needs of each case". *Id*. Citing FED. R. CIV. P. 26(b)(2)(C)(iii), *Bowers*, and *Public Service Enterprise Group, Inc. v. Philadelphia Elec. Co.*, 130 F.R.D. 543, 551 (D.N.J. 1990), Defendant maintains that "the court must limit the frequency or extent of discovery otherwise allowed...if it determines that the burden or expense of the proposed discovery outweighs its likely benefit". *Id*. Citing *Glenz v. Sharp Electronic Corp*., 2010 WL 2758729 (D.N.J. 2010), *Desmarteau v. CIT Group, Inc*., 2010 WL 3733014 (D.N.J. 2010), and *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000), Defendant acknowledges that "parties resisting discovery based on burdensomeness must substantiate their claims" while "the burden remains with the party seeking discovery to show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence". *Id*. at 6-7. Citing *Langbord v. United States Department of the Treasury*, 2008 WL 4748174 (E.D. Pa.

7

2008), Defendant contends that "other courts in this circuit have noted the Rules Advisory Committee's comments to the 2000 amendments to Rule 26 which state that new language was added to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery". *Id*. at 7.  Citing FED. R. CIV. P. 26(b)(2)(C), *Langbord*, and *Nicholas v. Wyndham Intern. Inc.*, 373 F.3d 537, 543 (4th Cir. 2004), Defendant argues that "the court must limit the frequency or extent of discovery if it determines that the party seeking discovery has had ample opportunity to obtain the information by discovery in the action". *Id*.

> **(a)     The information sought  in Plaintiff's interrogatories nos. 19 and 25 is irrelevant.**

Citing *Geaney*, Defendant maintains that "any additional discovery sought by Plaintiff is irrelevant because other terminated...employees are not similarly situated to Plaintiff". *Id*.  Citing *Grassmyer*, Defendant maintains that in that case the court found that "male employees were similarly situated to the female plaintiffs in a gender discrimination action because the male employees were employed at the same time with plaintiffs, held the same position, had the same supervisors and like the plaintiffs, failed to meet their sales quotas". *Id*.  Defendant compares that case to these circumstances and contends that "Plaintiff seeks information...regarding employees who do not fall into any such categories". *Id*.  Rather, Defendant contends that "the information sought by Interrogatories 19 and 25 will be completely comprised of employment records of employees who did not report to...Plaintiff's supervisor[,]...who were employed in different states, [who] held different positions[, and who were] terminated for different reasons". *Id*. at 8.  Further, Defendant notes that the information requested by Plaintiff "will show differentiating and mitigating factors unique to each former employee's situation and circumstances", unlike Plaintiff's circumstances wherein she "admitted to falsifying her timecards". *Id*.

8

Citing *Bowers*, Defendant maintains, the court denied plaintiffs' motion to compel defendant to "produce four categories of documents" because "although such policies could be relevant", the plaintiff "could and did discover information that was more relevant to her claims" and therefore plaintiff's requests had "minimal relevance" and were a "violation of the proportionality considerations in Rule 26(b)(2)(C)". *Id*. Defendant compares that case to these circumstances, where Plaintiff "has failed to carry her burden of showing any relevancy" and is "hoping the court will overlook the established standard of similarly-situated employees". *Id*. Defendant argues that "no further discovery is permissible" in light of the "similarly-situated relevance standards applicable in this case" as "it is highly unlikely that such information will lead to admissible evidence". *Id*. at 8-9.

> **(b)      Responding to Plaintiff's interrogatories nos. 19 and 25 will place a substantial burden and expense on Defendant.**

Defendant states that "the efforts to collect the discovery sought by Plaintiff will place a substantial burden and expense on Defendant". *Id*. at 9. Citing *Byrd v. PECO Energy Company*, 1999 WL 89711, at *1-2 (E.D. Pa. 1999), Defendant maintains, the court denied plaintiffs' request for "emergency call records and information from defendant over a period of years and across a five-county area" because the "burden of production...outweigh[ed] any benefit to plaintiffs" considering the "disorganization of the information, the lack of accessible format, the significant amount of labor and costs involved, and defendant's management structure". *Id*. Defendant compares that case to these circumstances based upon the following conditions:

> -Defendant is a national company with 491 stores and approximately 5,200 retail employees;
>
> -Defendant hires around 3,000 additional employees in its retail stores each year during the holiday season;
>
> -Defendant has a high turnover rate which causes it to employ more than 9,000 individuals over the course of a year;

9

-Defendant's stores are divided into four regions – East, South, Central and West – and at issue here is the East region, which consists of 119 retail stores across 12 states in the Northeast and Mid-Atlantic;

-Defendant's regions are managed by a Regional Vice President who supervises 37 District Managers that are responsible for supervising the operations of 6 to 17 retail stores and Store Managers;

-Defendant retains a personnel file which contains unique employee information including memoranda of disciplinary or corrective action for each active employee and each former employee;

-the information sought by Plaintiff is not in an accessible format as Defendant's employee personnel files contain hard copies of documents, ranging in size from 10 to 100 pages, that are not organized in a particular fashion, are not alphabetized, are not organized chronologically, and are not divided by category;

-the information sought by Plaintiff is not housed in a centralized database or single location but, rather, varies in location from Defendant's Shelton, Connecticut corporate office to Defendant's Griffin, Georgia storage facility;

-there are over 13,000 files at the Shelton, Connecticut facility housed in file cabinets that are alphabetized by employee last name, but those files are not organized by district, region, or store;

-the information at the Griffin, Georgia facility contains numerous shipments of unsorted, unorganized company documents that include, but are not limited to, personnel files of former employees because Defendant sends approximately 6,500 personnel files from Shelton, Connecticut to Griffin, Georgia each year;

-each retail store maintains a personnel file for each employee and, although documents prepared at the local level are supposed to be sent to the corporate office and made part of the corporate personnel file, there are occasions when documentation of disciplinary actions that are less than discharge are not forwarded and instances where the corporate personnel file is incomplete.

*Id*. at 9-12.

Defendant argues that "fulfilling Plaintiff's request for personnel files would require

retrieving...files from the Shelton corporate offices, the Griffin warehouse location, and from each of the 119 retail stores in the East Region". *Id*. at 11.   Specifically, Defendant contends that "the information sought by Plaintiff will require Defendant to institute a review of over 13,000 personnel files amounting to well beyond 130,000 pages of documents", a "difficult, time-consuming, and costly" endeavor that would have a "serious and detrimental impact on Defendant's efficiency and productivity". *Id*. at 12.   In fact, Defendant argues that "the review process of each individual personnel file would require a substantial investment of human capital due to the varying nature and size of each unique personnel file". *Id*.

### (c)   Defendant has already produced appropriate discovery.

Defendant again contends that it "has provided the appropriate information for the purposes of comparing similarly situated individuals" and that "no further information is necessary". *Id*.   Citing *Takacs v. Union County*, 2009 WL 3048471, at *2 (D.N.J. 2009), Defendant maintains, the court denied plaintiffs' motion to compel defendant to "identify by month, year, and charge, each pre-trial offense, or who was held on civil or family court matters from February 7, 2006 to present", because the request was "overly broad and burdensome" and plaintiffs "already had the information they needed to pursue their complaint". *Id*.   Defendant compares that case to these circumstances, where Plaintiff has asked Defendant to "identify any and all employees who were terminated during a two-year period", and asks the Court to apply the rationale of *Takacs* when considering this Motion.   *Id*. at 12-13.   Defendant notes that it has "already provided Plaintiff with a list of...all involuntarily terminated employees during the period of October 31, 2007 and October 31, 2009...[which] includes store number, brand, city, state, date of birth, job title, full or part-time status, regular or temporary status, termination date and reason for each person listed". *Id*. at 13.   Defendant further notes that it specified "which employees were terminated for violating rules relating to time cards". *Id*.   For this reason,

11

together with the "burden and expense of Plaintiff's request", Defendant requests that "any further attempts at discovery...be denied".  *Id.*

    **B.**    <u>**Plaintiff's Arguments in Opposition to the Motion**</u>

        **1.**    **The Court should deny Defendant's Motion because the discovery sought is essential to proving a claim for wrongful termination.**

Plaintiff notes that "the Court has already agreed with Plaintiff and has instructed Defendant twice to produce the information sought", with this being "Defendant's third attempt to avoid producing information that the Court has determined to be relevant and discoverable".  *See* Pl.'s Opp'n Br. at 8.

        **(a)**    **Defendant's Motion ignores this Court's prior instruction regarding who is a "similarly situated" employee for purposes of discovery.**

Plaintiff contends that, although "Defendant correctly states that part of the inquiry in a discrimination case is whether the employer treated similarly-situated employees outside of the protected class more favorably than the employer treated the Plaintiff", "Defendant's Motion is flawed because it ignores this Court's determination as to the definition of similarly situated employees for purposes of the requested discovery".  *Id.*  Citing *Rodriguez v. American Tel. & Telgraph Co.*, 1991 U.S. Dist. LEXIS 296, at *5-*6 (D.N.J. 1991), Plaintiff maintains that Defendant "argues for a limitation of discovery based on a constrained definition of similarly situated employees that has no support in case law" and that Defendant goes so far as to claim that "no employee...should be considered similarly situated to Plaintiff".  *Id.* at 8-9.  Plaintiff points out that Defendant "never acknowledges that this Court has already defined similarly situated employee[s] and...ruled that Plaintiff is entitled to discovery based on that definition".  *Id.* at 9.

        **(b)**    **Broad discovery is appropriate in an employment-discrimination case because the employer is the sole source of the proofs necessary for the claimant's case.**

Citing Fed. R. Civ. P. 26, *Rodriguez*, and *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 55 (D.N.J. 1985), Plaintiff maintains that "courts must not deprive a party of discovery that is reasonably necessary to develop and prepare the case" and that "broad discovery is especially appropriate in employment discrimination claims in which a claimant's proof of unlawful discrimination may often be indirect or circumstantial". *Id.* Plaintiff points out that "in such actions, courts have recognized that prior acts of discrimination are relevant...to prove a defendant's motive in his actions toward the plaintiff". *Id.* Plaintiff argues that "the applicable discovery parameters must be broader than the specific, individualized facts upon which a discrimination claimant's claims are based". *Id.*

### (c)   Plaintiff has adequately proven that the discovery she seeks is relevant to her claim of wrongful termination.

Plaintiff argues that "Defendant's Motion should be denied because Plaintiff has established that the information she seeks...is relevant to her claim of wrongful termination...[and] is critical to [her] ability to prove her claim". *Id.* at 9-10. Citing *Rodriguez* and *Robbins*, Plaintiff notes that Defendant has acknowledged that in order "to prove the elements of a cause of action for wrongful termination, a plaintiff must prove that the employer treated similarly-situated employees outside of the protected class more favorably than the employer treated the plaintiff" by way of "information regarding the employer's treatment of similarly-situated employees". *Id.* at 10. Plaintiff maintains that Defendant's arguments that "Plaintiff has failed to carry her burden of showing any relevancy of the information she seeks" and "that the information Plaintiff seeks cannot be used to establish discrimination claims" defy "logic and contradict [Defendant's] acknowledgment that an analysis of similarly-situated employees is necessary to establish a wrongful-termination claim". *Id.* Plaintiff points out that "this Court agreed that Plaintiff proved the relevancy of the information sought when the

13

Court instructed Defendant to provide Plaintiff with the requested discovery" and, therefore, Defendant's Motion for a protective order should be denied.  *Id.*

> **2.     The Court should deny Defendant's Motion because Defendant has not shown that producing the requested records would be unduly burdensome relative to their probative value.**

Although "discovery of disciplinary actions for working off the clock" may be difficult for Defendant to produce, Plaintiff contends that they "are crucial to Plaintiff's claim that she was treated differently from similarly-situated employees and thus discriminated against".  *Id.* at 10-11.  Citing *Rodriguez*, Plaintiff maintains that "simply complaining about expense of producing relevant information is insufficient to show the burden of discovery" and, instead, "the party resisting discovery demands must provide a detailed affidavit explaining the burdensome nature of producing such documents".  *Id.* at 11.  Plaintiff argues that Defendant's argument that "producing records responsive to Plaintiff's requests will impose undue burden and expense on Defendant is unpersuasive" because the fact that Defendant may have "failed to maintain its files in an orderly fashion" or may have files that are incomplete does not mean that Defendant "should not have to produce what responsive materials that it does have".  *Id.* at 11-12.  Plaintiff argues that Defendant has mischaracterized the *Byrd* and *Takacs* cases, as "the *Byrd* court ordered the defendant to provide four years worth of records at an estimated expense to defendant of $55,000" and as "the plaintiff in *Takacs* was seeking discovery only to obtain names of persons to be included as potential class members in a proposed class action...[rather than] information necessary to prove his case".  *Id.* at 12.

Importantly, Plaintiff contends that Defendant's argument that "it would suffer undue burden and expense in responding to Plaintiff's discovery requests due to the inadequacy of Defendant's filing system" suggests "that any corporate defendant wishing to evade its discovery obligations need only neglect its files...[in order] to be absolved of its responsibility to provide relevant, discoverable

14

information". *Id.*   Plaintiff maintains that Defendant "mischaracterizes case law in its attempt to support its argument that Plaintiff's requests are unreasonable and overly burdensome" even though "Plaintiff's requests seek only two years of records pertaining to only those employees working in Defendant's East region who were disciplined for working off the clock". *Id.* at 12-13.   Plaintiff notes that "this Court has already deemed Plaintiff's requests to be reasonable and twice instructed Defendant to comply with same". *Id.* at 13.   Citing *Robbins*, 105 F.R.D. at 63 and *Bell v. Lockheed Martin Corp.*, 2010 WL 3696455, at *5 (D.N.J. 2010), Plaintiff maintains that "the Court should deny Defendant's Motion for protective order" because "Defendant has failed to prove that this request presents a genuine hardship that merits denying Plaintiff access to relevant, discoverable material". *Id.*

## III.   DISCUSSION

### A.   Legal Standards

#### 1.   Discovery

Pursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence". *See also Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).   Importantly, pursuant to FED. R. CIV. P. 26(b)(2)(C), "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

    (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

    (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

15

(iii)    the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. *See Barnes Found. v. Twp. of Lower Merion*, 1996 WL 653114, at *1 (E.D. Pa. 1996). Importantly, "Courts have construed this rule liberally, creating a broad vista for discovery". *Takacs v. Union County*, 2009 WL 3048471, at *1 (D.N.J. 2009)(*citing Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981)); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Evans v. Employee Benefit Plan*, 2006 WL 1644818, at *4 (D.N.J. 2006). However, "a discovery request may be denied if, after assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, the District Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery". *Takacs*, 2009 WL 3048471, at *1; *see also Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). "The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry". *Takacs*, 2009 WL 3048471, at *1 (*citing Bowers v. National Collegiate Athletic Assoc.*, 2008 WL 1757929, at *4 (D.N.J. 2008)); *see also Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989); *Public Service Group, Inc. v. Philadelphia Elec. Co.*, 130 F.R.D. 543, 551 (D.N.J. 1990).

## 2.    Protective Order

Pursuant to FED. R. CIV. P. 26(c)(1), "the court may, for good cause, issue an order to protect a

party or person from annoyance, embarrassment, oppression, or undue burden or expense, including

one or more of the following:

    (A)    forbidding the disclosure or discovery;

    (B)    specifying terms, including time and place, for the disclosure or discovery;

    (C)    prescribing a discovery method other than the one selected by the party seeking discovery;

    (D)    forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

    (E)    designating the persons who may be present while the discovery is conducted;

    (F)    requiring that a deposition be sealed and opened only on court order;

    (G)    requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

    (H)    requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

However, "if a motion for a protective order is wholly or partly denied, the court may, on just terms,

order that any party or person provide or permit discovery".  FED. R. CIV. P. 26(c)(2).

### 3.    New Jersey Law Against Discrimination and Similarly Situated Employees

"New Jersey courts have interpreted the proofs and burdens of persuasion for discrimination

under the NJLAD in the same manner as that under the federal anti-discrimination laws".  *Swider v.

Ha-Lo Indus.*, 134 F. Supp. 2d 607, 621 (D.N.J. 2001)(citing *Erickson v. Marsh & McLennan Co.*, 117

N.J. 539, 550 (1990)); *see also Clowes v. Terminix Int'l, Inc.*, 109 N.J. 575, 595 (1988); *Bergen

Commercial Bank v. Sisler*, 157 N.J. 188, 210 (1999) (utilizing the framework established by

17

*McDonnell Douglas v. Green*, 411 U.S. 792 (1973)).  "To make out a prima facie case of age discrimination under the NJLAD, a plaintiff must show: (1) that he is a member of a class protected by the anti-discrimination law; (2) that he was performing his job at a level that met his employer's legitimate expectations; (3) that he was discharged; and (4) that he was replaced by someone sufficiently younger to give rise to an inference of unlawful age discrimination".  *Swider*, 134 F. Supp. 2d at 621; see *also Healy v. New York Life Ins. Co*., 860 F.2d 1209, 1214 (3d Cir. 1988), *cert. denied*, 490 U.S. 1098 (1989); *Fischer v. Allied Signal Corp*., 974 F. Supp. 797, 805 (D.N.J. 1997).  "As an alternative to the...fourth prong of the prima facie case, a plaintiff may show that similarly situated individuals outside the plaintiff's class were treated more favorably".  *Grassmyer v. Shred-It USA, Inc*., 2010 WL 3330102, at *8 (3d Cir. 2010); *see also Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 939-40 (3d Cir. 1997); *Olson v. Gen Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996); *Proctor v. ARMDS Inc*., 2009 WL 2518585, at *1 (3d Cir. 2009); *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978); *Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Courts have developed case-specific definitions as to what constitutes a "similarly situated employee".  *See, e.g., Geaney v. Computer Scis. Corp*., 2005 WL 1387650, at *4 (D.N.J. 2005) (deeming similarly situated to mean individuals who (1) dealt with the same supervisor, (2) have been subject to the same standards, and (3) have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it); *Grassmyer v. Shred-It USA, Inc*., 2010 WL 3330102 (3d Cir. 2010) (finding that male employees were similarly situated to female plaintiffs in a gender discrimination case where the male employees were employed during the same period as plaintiffs, held the same position, had the same supervisors, and also failed to meet their sales quotas); *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509,

531 (3d Cir. 1993) (finding that similarly situated employees included other individuals who underwent subjective evaluations so long as those individuals' deficiencies in the same qualification category as the plaintiff's were overlooked for no apparent reason when they were promoted); *Mosca v. Cole*, 384 F. Supp. 2D 757, 766 (D.N.J. 2005) (holding that in order to be deemed similarly situated, the individuals with whom a plaintiff seeks to be compared must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it); *see also Bullock v. Children's Hosp. Of Philadelphia*, 71 F. Supp. 2D 482, 489 (E.D. Pa. 1999); *Dill v. Runyon*, 1997 WL 164275, at *4 (E.D. Pa. 1997); *Anderson v. Haverford College*, 868 F. Supp. 741, 745 (E.D. Pa. 1994); *Watkins v. The Children's Hosp. of Philadelphia*, 1997 WL 793518, at *2 (E.D. Pa. 1997).   Importantly, "the applicable discovery parameters must be broader than the specific individualized facts upon which...claims are based because of the nature of the proofs required to demonstrate unlawful discrimination which may often be indirect or circumstantial".  *Rodriguez v. American Tel. & Telgraph Co.*, 1991 U.S. Dist. LEXIS 296, at *5-*6 (D.N.J. 1991); s*ee also Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 55 (D.N.J. 1985). "Courts have recognized that prior acts of discrimination are relevant, in appropriate circumstances, to prove a defendant's intent as motive in his actions toward the plaintiff".  *Rodriguez*, 1991 U.S. Dist. LEXIS 296, at *9; *see also Hazelwood School District v. United States*, 433 U.S. 299, 309-10, n.5 (1977); *Hogan v. American Tel. & Telegraph Co*., 812 F.2d 409, 410 (8th Cir. 1987); *Robbins*, 105 F.R.D. at 58.

### B.    Defendant's Motion for a Protective Order

Here, Plaintiff's theory of the case is that despite Defendant's corporate policy of imposing progressive discipline for infractions with respect to "working off the clock", Defendant used "timecard fraud" as a pretext to wrongfully terminate Plaintiff in lieu of stating its actual discriminatory animus

19

based upon Plaintiff's age or disability.  Given applicable case law, Plaintiff seeks to show that other similarly situated individuals who committed timekeeping violations were subjected to progressive discipline rather than termination and thereby attempt to create an inference of Defendant's discrimination against Plaintiff.  Initially, Plaintiff requested two (2) years worth of data as to employees terminated by Defendant (*see* Interrogatory No. 19) and two (2) years worth of data as to employees who were terminated or disciplined for timekeeping violations or who were over age forty (40) and terminated for any reason (*see* Interrogatory No. 25).  More recently, Plaintiff clarified that she seeks discovery "of all disciplinary actions, including all terminations, for time-card fraud, working off the clock, and falsifying time records...[and] the identify of any Carter's employees over age forty who were terminated and the grounds for their termination".  *See* Cert. of James P. Lisovicz, Ex. E at 3. Based upon Plaintiff's allegations and discovery demands, albeit informally, the Court previously defined "similarly situated individuals" – and therefore narrowed Plaintiff's discovery requests – to mean full-time employees who worked as store managers, assistant managers, sales associates, stock associates, and supervisors who were disciplined or terminated for "working off the clock", "timecard fraud", and/or any other timekeeping infraction.  In general, "similarly situated individuals" in this litigation include Defendant's employees who were required to comply, and were disciplined or terminated for failing to do so, with the same timekeeping policies applied with respect to Plaintiff's termination.  Additionally, the Court narrowed the scope of Plaintiff's requests to include only the East Region of Defendant's operations with the possibility of an expansion of scope dependent upon what that discovery demonstrates.

Based upon the foregoing, including the narrowed scope of Plaintiff's discovery requests which the Court further tailored to the specifics of this case, the Court finds the information sought in Plaintiff's Interrogatories Nos. 19 and 25 relevant, reasonably calculated to lead to admissible evidence,

and neither unduly burdensome or expensive.  Importantly, the Court notes that in *Byrd v. PECO Energy Company*, 1999 WL 89711 (E.D. Pa. 1999) – a case cited by Defendant as "quite similar" to the circumstances here (Def.'s Br. at 9) – PECO was ordered to produce four (4) years worth of information at an expense to PECO of approximately $55,000.00.  *Byrd*, 1999 WL 89711 at *1-2.  The fact that Carter's is a large company with operations and employees across the United States that maintains personnel files in several locations without any uniform organizational method does not exempt Defendant from reasonable discovery obligations.  Indeed, despite Defendant's recitation of the burden and costs associated with production, it has already provided Plaintiff with partially responsive materials.  While the Court appreciates that additional time and resources may be required in order to fully respond to Plaintiff's requests, and having "assessed the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues" (*Takacs*, 2009 WL 3048471, at *1), the Court finds that the probative value of production outweighs the burden and/or expense imposed as a consequence thereof.

## IV.    CONCLUSION AND ORDER

The Court having considered the papers submitted and opposition thereto, and for the reasons set forth above;

**IT IS** on this 28th day of January, 2011,

**ORDERED** that Defendant's Motion for a protective order with respect to Plaintiff's interrogatories nos. 19 and 25 [dkt. entry no. 28] is **DENIED**; and it is further

**ORDERED** that Defendant shall provide additional responsive materials to Plaintiff, as set forth herein, within thirty (30) days of the date hereof.

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**